SUPREME JUDICIAL COURT 
 
 IN THE MATTER OF JOHN HOFFMAN MORAN

 
 Docket:
 SJC-13591
 
 
 Dates:
 January 31, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Attorney at Law, Admission to practice. Board of Bar Examiners. Supreme Judicial Court, Membership in the bar.
 
 

       The Board of Bar Examiners (board)
reported that John Hoffman Moran was not qualified for admission to the
Massachusetts bar because of certain character and fitness concerns.  Moran petitioned a single justice of this
court for review.  The single justice
denied Moran's petition and dismissed his application for admission to the bar.  Moran appeals, and we affirm.
      1. 
Background.  Moran graduated from
an accredited law school in 2013 and first filed an application for admission
to the Massachusetts bar in 2018.  He did
not pass the written examination in July 2018, but he reapplied and
subsequently passed the examination in February 2019.[1] After reviewing
Moran's application for admission, the board determined that an inquiry into
Moran's character and fitness to practice law in Massachusetts was necessary
and appointed special counsel to conduct an investigation.  After receiving the special counsel's
investigative report, the board conducted a formal evidentiary hearing to
determine whether Moran is "of good moral character and sufficient
acquirements and qualifications" to warrant his admission to the bar.  G. L. c. 221, § 37.  See S.J.C. Rule 3:01, § 5.1, as appearing in
478 Mass. 1301 (2018); Rule V.2 of the Rules of the Board of Bar Examiners
(2021).  The board concluded that Moran
failed to meet his burden of demonstrating that he possessed the requisite
character and fitness, and it submitted a report of nonqualification to this
court.  The single justice agreed with
the board's conclusions and dismissed Moran's application for admission to the
bar.
      2. 
Facts.  Moran has a history of
alcohol-related legal issues spanning the years 1997 to 2014, including seven
arrests and three convictions for operating a motor vehicle while under the
influence of alcohol (OUI) or a related offense.  Some of these incidents occurred while Moran
was attending law school and led to a suspension and expulsion from school,
although he did ultimately obtain his law degree.  Moran was also arrested three other times for
nonalcohol related incidents.  In its
report of nonqualification, the board noted that Moran has made positive
"purposeful life changes" and has had no arrests since 2014.  The board also specifically stated that it
"did not give weight to the facts or circumstances underlying
. . . Moran's alcohol-related arrests or convictions in its
determination relative to [his application for admission to the
bar]."  
      a. 
Commercial pilot certificate.  The
board did, however, have concerns with Moran's OUI arrests and convictions as
they were relevant to Moran's commercial pilot certificate.  In particular, the board was concerned with
Moran's failure to  inform the Federal Aviation
Administration (FAA) regarding the OUI charges and convictions.  Moran was initially issued a pilot's
certificate in 1993.  The certificate was
inactive from the late 1990s until April 2021, when Moran obtained a new
certificate.  When the board first
inquired of Moran whether he was required to disclose his arrests or
convictions for OUI, and any related suspension of his driver's license, to the
FAA, Moran responded that he did not know what his obligations were, that he
would find out, and that he would provide that information to the board.  
      Moran subsequently submitted a letter to
the board indicating that inactive pilots are not required to disclose OUI
arrests and convictions to the FAA.  More
specifically, Moran indicated that he had spoken with a particular
administrative investigator at the FAA and that the investigator had told Moran
that there was no such requirement.  This
was, as it turns out, untrue.  Moran
later suggested that he had misunderstood what he had been told by the FAA and
acknowledged that his rendition of whom he spoke with at the FAA and what they
had told him were inaccurate.  Moran
subsequently reported the required information to the FAA but then failed to
cooperate with the FAA's investigation by demanding that the FAA itself obtain
the relevant records relating to his criminal history rather than providing
them himself.  Eventually, Moran accepted
a 120-day suspension proposed by the FAA and was able to obtain a new pilot's
certificate in April 2021.
      b. 
Tax filings.  The board was also
concerned with Moran's conduct in relation to certain tax filings.  When the board initially inquired whether
Moran had filed income taxes for the years 2016, 2017, and 2018, both
individually and on behalf of the company that Moran owned, he was unable to
answer the question.  During the course
of the special counsel's investigation, Moran gave conflicting answers
regarding whether he had filed his taxes, and although he eventually provided
draft copies of his returns for the indicated years, he stated that the returns
for two of the years needed to be revised because they were missing certain
income.  He also indicated that he would
update special counsel regarding those revisions, but never followed up with
that information.  At the formal hearing
following the special counsel's investigation, Moran testified as to some
confusion on his part regarding the filing of individual and corporate
taxes.  Although he did eventually look
into the matter and ensured that his taxes were properly filed, he did not do
so until prompted by the special counsel's investigation.  Additionally, there was some indication that
not all of the information included in his tax returns was accurate.
      3. 
Discussion.  While we give
"deference . . . to the decision of the board, this court retains ultimate
authority to decide a person's fitness to practice law in the
Commonwealth."  Strigler v. Board of
Bar Examiners, 448 Mass. 1027, 1029 (2007), quoting Matter of Prager, 422 Mass.
86, 91 (1996).  That determination
requires that we consider the public interest, and "[a]ny significant
doubts about an applicant's character should be resolved in favor of protecting
the public by denying admission to the applicant."  Britton v. Board of Bar Examiners, 471 Mass. 1015,
1017 (2015), quoting Matter of an Application for Admission to the Bar of the
Commonwealth, 444 Mass. 393, 397 (2005). 
Moreover, 
"[c]andor
with the board is essential.  'It is the
obligation of an applicant to assure the members of the board and, ultimately,
this court that he or she possesses the necessary qualifications to practice
law in the Commonwealth.  Such a showing
requires a full and exhaustive disclosure of prior wrongdoing, including all relevant
circumstances surrounding the conduct, both militating and mitigating, and
official documentation where appropriate.'"  
Strigler, supra,
quoting Matter of Prager, supra at 100.
      Rule V of the Rules of the Board of Bar
Examiners sets forth a number of attributes that the board "considers . .
. to be essential for all petitioners seeking admission to the Massachusetts
bar."  Rule V.1 of the Rules of the
Board of Bar Examiners (2021).  Those
attributes include, among other things, "[t]he ability to conduct oneself
with respect for and in accordance with the law."  Id.  In
its report of nonqualification, the board stated that it had determined that
Moran had failed to demonstrate that he has the ability to conduct himself with
respect for and in accordance with the law. 
We agree.
      Although Moran was forthcoming in many
respects in his petition for admission to the bar, providing, for example, the
required information regarding his OUI arrests and convictions, he has
demonstrated both a lack of candor and an inability to accept responsibility
for some of his actions.  For example,
the special counsel noted that during the first investigative interview, in
connection with the OUI issues, Moran initially "maintain[ed] some level
of denial regarding being over the legal limit."  In Moran's view, he should not have been
arrested because he was not intoxicated. 
Later in the investigation, Moran "admitted that he drank to excess
in connection with . . . the arrests." 
Special counsel also noted difficulty in confirming the nature or extent
of Moran's work history and, as stated above, never received from Moran all the
tax filing information that special counsel had requested.  
      Moran has acknowledged that he has not
always accepted responsibility for his actions, and we recognize his efforts to
demonstrate rehabilitation in this area. 
He also, to some extent, acknowledged mistakes, both to special counsel
and at the hearing before the board, but he nevertheless continues to place
some of the blame for his mistakes or wrongdoing on others.  In other words, he continues to fail to accept
responsibility for his actions.  For
example, Moran appears to have claimed certain deductions on his tax returns
with respect business expenses.  Moran
continues to claim that he took the deductions because he was directed to do so
by his accountant -- that is, he blames his accountant –‑ and asserts that the
deductions were not improper.  However,
he did not provide any legal or factual basis for so claiming.
      He has also attributed his failure to
comply with his obligation to report the OUI arrests and convictions to the FAA
as an "innocent lapse of memory" and a
"misunderstanding."  Even if he
was unaware, initially, of the requirement to report the OUI issues, Moran was
less than straightforward with the board about his conversations with the FAA
on that subject and gave the board information that was demonstrably
false.  Moreover, he only looked into the
FAA matter because he was prompted to do so by the board.  There is no indication that he would have
sought to comply with the reporting obligation if not for the board's
investigation.
      Overall, Moran has not established
"by clear and convincing evidence his . . . current good character and
fitness to be admitted to the practice of law."  Rule V.2.2 of the Rules of the Board of Bar
Examiners.  He has not, in short,
demonstrated that he has the ability to conduct himself with respect for and in
accordance with the law.  As such, we are
not "confident that allowing [Moran] to practice law would not be detrimental
to the public interest."  Porter v.
Board of Bar Examiners, 489 Mass. 1012, 1015 (2022), quoting Matter of an
Application for Admission to the Bar of the Commonwealth, 444 Mass. at 411.
      4. 
Conclusion.  The judgment of the
single justice denying Moran's petition for review of the board's determination
of nonqualification and dismissing his application for admission to the bar is
affirmed.
So ordered.
      The case was submitted on briefs.
      John H. Moran, pro se.
      Elizabeth J. Storms for Board of Bar
Examiners.
 
footnotes
 
[1] The
petitioner resides in Florida.  He has
not applied for admission to the Florida bar, and it is unclear from the record
whether he has applied for admission to any jurisdiction other than
Massachusetts.